**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Johnny ETIMANI, Defendant–
Appellant.**

---

United States of America,
Plaintiff–Appellant,

v.

Johnny Etimani, Defendant–Appellee.

Nos. 01–10435, 01–10440.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 13, 2003.

Filed April 21, 2003.

David F. Klein, Honolulu, HI, for the defendant-appellant-appellee.

Michael Rotker, Assistant United States Attorney, Department of Justice, Washington, DC, for the plaintiff-appellee-appellant.

Before: SILVERMAN, GOULD, Circuit Judges, and SEDWICK,[1] District Judge.

SILVERMAN, Circuit Judge.

18 U.S.C. § 3509 sets forth the procedure by which an alleged child victim can testify outside of the physical presence of the defendant via two-way closed circuit television. The statute requires, among other things, that the defendant's televised image be transmitted into the room where the child is testifying. We hold today that the television monitor must be called to the child's attention and be readily visible from where she is seated, but that it does not have to be in her direct field of vision while she is facing forward.

In the government's cross-appeal, we consider whether the defendant should have been sentenced to mandatory life imprisonment under the "two strikes" provision of 18 U.S.C. § 2241(c). The defendant previously had pled no-contest in California state court to "lewd and lascivious conduct upon a child." The district court ruled that the government failed to establish that the defendant's California conviction involved a "sexual act"—as opposed to "sexual contact"—as defined by federal law. We agree with the district court that the prior conviction was not shown to qualify as a "first strike" for purposes of 18 U.S.C. § 2241(c).

## I. Background

### A. Pre-trial

A federal grand jury for the District of Hawaii charged appellant Johnny Etimani with aggravated sexual abuse of his six-year old daughter, "S.E.," in violation of 18 U.S.C. § 2241(c). As modified, the indictment alleged that:

> [b]etween on or about April 27, 1997, and on or about April 30, 1997, within the special maritime and territorial jur-

---

**1.** The Honorable John W. Sedwick, Chief United States District Judge for the District of Alaska, sitting by designation.

isdiction of the United States, JOHNNY ETIMANI, did knowingly engage in a sexual act, to wit, the intentional touching, not through the clothing, of the genitalia of another person, identified as S.E., who had not attained the age of 12 years with the intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desire of a person.

Prior to trial, pursuant to 18 U.S.C. § 3509(b)(1),[2] the government requested that S.E., then aged 8, be permitted to testify via closed-circuit television. The government's motion was supported by the report of June W.J. Ching, Ph.D., a clinical psychologist. Dr. Ching stated in her report:

> [S.E.'s] significant distress and fears would affect her memory and impair her ability to communicate accurately and completely in open court if her father, Johnny Etimani, were physically present. Additionally, due to her fragile emotional state and fear of Mr. Etimani,

**2.** 18 U.S.C. § 3509(b)(1) states:

> (b) Alternatives to live in-court testimony.— (1) Child's live testimony by 2–way closed circuit television.—
> (A) In a proceeding involving an alleged offense against a child, the attorney for the Government, the child's attorney, or a guardian ad litem appointed under subsection (h) may apply for an order that the child's testimony be taken in a room outside the courtroom and be televised by 2–way closed circuit television. The person seeking such an order shall apply for such an order at least 5 days before the trial date, unless the court finds on the record that the need for such an order was not reasonably foreseeable.
> (B) The court may order that the testimony of the child be taken by closed-circuit television as provided in subparagraph (A) if the court finds that the child is unable to testify in open court in the presence of the defendant, for any of the following reasons:
> (i) The child is unable to testify because of fear.
> (ii) There is a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying.
> (iii) The child suffers a mental or other infirmity.
> (iv) Conduct by defendant or defense counsel causes the child to be unable to continue testifying.
> (C) The court shall support a ruling on the child's inability to testify with findings on the record. In determining whether the impact on an individual child of one or more of the factors described in subparagraph (B) is so substantial as to justify an order under subparagraph (A), the court may question the minor in chambers, or at some other comfortable place other than the courtroom, on the record for a reasonable period of time with the child attendant, the prosecutor, the child's attorney, the guardian ad litem, and the defense counsel present.
> (D) If the court orders the taking of testimony by television, the attorney for the Government and the attorney for the defendant not including an attorney pro se for a party shall be present in a room outside the courtroom with the child and the child shall be subjected to direct and cross-examination. The only other persons who may be permitted in the room with the child during the child's testimony are—
> (i) the child's attorney or guardian ad litem appointed under subsection (h);
> (ii) Persons necessary to operate the closed-circuit television equipment;
> (iii) A judicial officer, appointed by the court; and
> (iv) Other persons whose presence is determined by the court to be necessary to the welfare and well-being of the child, including an adult attendant.
> The child's testimony shall be transmitted by closed circuit television into the courtroom for viewing and hearing by the defendant, jury, judge, and public. The defendant shall be provided with the means of private, contemporaneous communication with the defendant's attorney during the testimony. The closed circuit television transmission shall relay into the room in which the child is testifying the defendant's image, and the voice of the judge.
> 18 U.S.C. § 3509(b)(1)(2003).

there would be a substantial likelihood that [S.E.] would suffer serious emotional trauma if she was required to testify in open court in the presence of defendant, Mr. Etimani. It would be substantially less stressful if [S.E.] were allowed to testify out of the presence of the defendant, with the use of 2–way closed-circuit television under Title 18 U.S.C. 3509.

After conducting an evidentiary hearing at which Dr. Ching testified, the district court granted the government's motion and explained its reasoning as follows:

I am going to grant the government's motion ... to allow victim's testimony by way of closed-circuit television at time of trial. And I am basing that ruling on my finding, having read Dr. June Ching's report and heard her testimony, I am finding that there is a substantial likelihood established by her testimony that the child would suffer emotional trauma from testifying in the presence of the [defendant].

And there are some details contained in the report that are persuasive to me, and one is the child's tendency to hide when asked about the sexual abuse. Although the defense depicted that as just general reluctance and possibly fear unrelated to the possibility that the victim would have to face the defendant, it seems to me quite the opposite. That, if indeed the defendant is so traumatized even without the presence of—if the child is so traumatized even without the presence of the defendant, that Dr. Ching's opinion that indeed the presence ... of the defendant would then have a significant negative impact on the child's ability to testify fully on the subject of the alleged abuse, I find that opinion by Dr. Ching to be supported by the evidence and the interviews she had with the child and her background accounts.

In addition, it does appear that the child goes through periods of depression, is afraid of being abandoned, believes that indeed she is the reason that the defendant is in jail, appears to avoid talking about the subject of the alleged abuse, appears embarrassed and anxious, is at this time only eight years old and was six years old at the time of the alleged abuse and has repeatedly told Dr. Ching that she is so scared and repeated that she was threatened by the defendant. And, given her allegations of past physical abuse, the victim's expressed fears of the possibility of future physical abuse provide a sound basis for Dr. Ching's opinion.

## B. Trial

S.E. testified at trial from a nearby witness room via two-way closed circuit television. In the courtroom—where the judge, jury, Etimani, and one of his lawyers remained—a television camera and three 27–inch monitors were set up. The monitors in the courtroom showed S.E. and her guardian ad litem sitting at the head of a conference table in the witness room, and the prosecutor and defense counsel sitting at opposite sides of the table. They also showed the TV monitor situated in the witness room, which carried the image of Etimani and his lawyer.

The monitor in the witness room was located slightly behind and to the left of where S.E. was seated. Defense counsel in the witness room wore a headset with a microphone, as did Etimani in the courtroom, so that counsel and the defendant could communicate during S.E.'s testimony. Diagrams of the setup of the courtroom and witness room were made part of the record and are appended to this opin-

ion.[3] The monitor in the witness room was not in S.E.'s line of sight as she faced forward, but was readily visible if she turned to her left—which, a review of the videotape of her testimony shows, she easily did. Indeed, the following colloquy took place during S.E.'s direct examination:

Q. (By Mr. Kubo [the prosecutor]) Now,[S.E.], when you were called into this room, I saw you looking at the television screen.

A. Yes.

Q. Which television screen would that be?

A. That would be that one.

Q. Okay. And who is on that screen?

A. My father and his attorney.

Q. And your father would be the one on the right?

A. Yes.

The gist of S.E.'s testimony was that, on an occasion when her mother was away from home for military training, her father, the defendant, told her to take off her clothes, and then he touched and squeezed her private parts with his fingers. To prove the date of the crime, the government called S.E.'s mother, a member of the Army, who testified that she was away from home on military field exercises between April 27th and April 30th, 1997.

## C. Verdict, post-trial motion, and sentencing

The jury found Etimani guilty as charged. Prior to sentencing, Etimani renewed a motion for judgment of acquittal, contending mainly that the government failed to prove beyond a reasonable doubt that the molestation occurred in April,

1997. That motion was denied. Shortly prior to sentencing, pursuant to Rule 17(b), Federal Rules of Criminal Procedure, Etimani requested the issuance of a subpoena directed to a JAG officer who could supposedly testify that there were no Army records to corroborate the mother's testimony that she was on field training during the dates she indicated. The motion was denied.

At sentencing, the government argued that Etimani was subject to a mandatory sentence of life imprisonment pursuant to 18 U.S.C. § 2241(c). This was because Etimani previously had been convicted in California state court of "lewd and lascivious conduct upon a child" in violation of Cal.Penal Code § 288(a), which, the government argued, was a previous conviction of a "sexual act" on a minor. The district court disagreed that the California prior qualified as a predicate offense for purposes of § 2241(c), and it sentenced the defendant to 170 months imprisonment.

Etimani appeals the district court's rulings concerning S.E.'s closed-circuit testimony and the orders denying his post-trial motions for judgment of acquittal and for the issuance of a post-trial subpoena. The government cross-appeals the district court's refusal to impose a mandatory life sentence.

## II. Jurisdiction

We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 and the government's cross appeal pursuant to 18 U.S.C. § 3742(b).

## III. The Confrontation Clause and Section 3509(b)(1)

In *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the

---

**3.** We commend the district judge and both counsel for the excellent record that was made of the logistics of the television setup. In addition to the diagrams, the entirety of

S.E.'s appearance, from when she entered the witness room until she left, was videotaped, which we were able to review.

Supreme Court upheld a Maryland statute under which a child witness in a sexual abuse case was allowed to testify by one-way closed-circuit television upon a finding by the trial court that in-court testimony "will result in the child suffering serious emotional distress such that the child cannot reasonably communicate." *Id.* at 841, 110 S.Ct. 3157. In accordance with the Maryland statute, the child witness, prosecutor and defense counsel were in a near-by witness room while the judge, jury and defendant remained in the courtroom. *Id.* The child's testimony was transmitted to the courtroom and displayed on television monitors for the jury. *Id.* at 841. The defendant had electronic communication with his lawyer. *Id.* at 842. It is to be noted that this was a *one-way* transmission: The people in the courtroom could see the witness, but the witness could not see the people in the courtroom, including the defendant.

The Supreme Court held that such an arrangement could survive constitutional scrutiny if the record demonstrated, as it did, that the child would be traumatized by the presence of the defendant, and that the trauma likely would be "more than de minimis, more than mere nervousness or excitement or some reluctance to testify." *Id.* at 856 (internal quotations omitted).

Five months after *Craig,* Congress enacted the Child Victims' and Child Witnesses' Rights Act of 1990, Pub.L. No. 101–647, 104 Stat. 4798, Title II, Subtitle (D), Section 225(a) (1990), codified at 18 U.S.C. § 3509.[4] Pursuant to § 3509(b)(1)(A), a prosecutor, the child's attorney or a guardian ad litem may apply for an order authorizing a child witness to testify "in a room outside the courtroom ... televised by 2–way closed circuit television." The district court may order testimony of the child by closed-circuit televi-

sion "if the court finds that the child is unable to testify in open court in the presence of the defendant" because "[t]here is a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying." 18 U.S.C. § 3509(b)(1)(B)(ii). The court "shall support [its] ruling on the child's inability to testify with findings on the record." *Id.* § 3509(b)(1)(C).

For the record, Etimani argues that the Supreme Court wrongly decided *Craig,* and that 18 U.S.C. § 3509 violates the Confrontation Clause of the Sixth Amendment. Suffice it to say that if *Craig* upheld the constitutionality of *one-way* television testimony in an appropriate case, then *two-way* television testimony, a procedure that even more closely simulates in-court testimony, also passes constitutional muster.

Etimani's main argument is statutory: That the placement of the monitor in the witness room—behind and to the left of the child, rather than in her field of vision while testifying—violated the intent if not the language of § 3509(b)(1)(D), which requires that "[t]he closed circuit television transmission shall relay into the room in which the child is testifying the defendant's image, and the voice of the judge." Etimani argues that the location of the monitor "was tantamount to the placement of a screen" between the witness and the defendant's televised image, and defeated the whole purpose of the requirement that the defendant's image be transmitted into the witness room.

We respectfully disagree. In the first place, it is important to recognize what we are *not* dealing with: The monitor was not covered with a drop cloth, obstructed by a screen, or turned to face a wall; nor was

4. *See* note 2.

500

the monitor a tiny Sony Watchman that would have been invisible to the witness from where she was seated—all examples of literal compliance with the statute that would defeat its purpose. To the contrary, the 27-inch monitor was positioned so that S.E. could easily see it from where she sat. As pointed out already, the presence of the television was called to her attention during her testimony; she readily looked at it, saw the defendant and his lawyer, and even testified to what she saw. It was there for her to look at, or to avoid looking at, throughout her entire testimony—just as a witness in a courtroom can choose to look a defendant in the eye or studiously avoid doing so. Furthermore, *the jury* could see that S.E. was able to look at the defendant—or not look at him—and could take those observations into account in its assessment of her credibility.

Etimani argues that in enacting § 3509, Congress intended that the television monitor would be placed in the child witness's "field of vision" while testifying, even if the statute doesn't explicitly say so. The legislative history of § 3509 belies that contention.

The original House bill, HR 5269, provided that the television be "within the child's field of vision:"

[t]he closed circuit television transmission shall display an image of the defendant into the room in which the child is testifying, and within the child's field of vision, and the child's testimony into the room in which the defendant is viewing the proceeding.

H.R. 5269, 101st Cong., 2d Sess., Title XX, subtitle (C), § 2009(c)(6)(B) (1990). The House Judiciary Committee Report cautioned that the phrase "within the child's field of vision" should not be read to require the child to view the defendant's image:

When a child does testify by two-way closed circuit television, the monitor displaying the image of the defendant into the room where the child testifying shall: a) display a full view of the defendant sitting in the courtroom but the screen shall not be filled completely by the defendant's image; b) **the monitor shall be placed within the child's field of vision, but not in a place or at a distance that would force the child to watch the monitor.**

H.R.Rep. No. 101–681(I), 101st Cong., 2d Sess. (1990), reprinted in 1990 U.S.C.C.A.N. 6472, 6574 (emphasis added).

In contrast, the Senate bill, S. 3266 did *not* contain the field-of-vision language. Ultimately, the House acceded to the Senate version and it became law. 136 Cong. Rec. H13288–02, H13296, (1990). This history clearly shows Congress's intention to not require the placement of the monitor in the child's field of vision.

Etimani also relies on *United States v. Miguel,* 111 F.3d 666 (9th Cir.1997). In *Miguel,* we held that a district court's arrangements for a videotaped deposition of a child witness in a sexual abuse case, that was ordered to take place outside the presence of the defendant, violated the defendant's right to counsel because no provision was made for contemporaneous communication between the defendant and his lawyer. *Id.* at 668. In giving an overview of 18 U.S.C. § 3509 in *Miguel,* we mentioned that Congress had authorized the testimony of child witnesses by "[t]wo-way television, in which the testifying child witness is exposed to a television image of the defendant, . . ." *Id.* at 670.

Etimani argues that "expos[ure] to a television image of the defendant," as defined by *Miguel,* means that the monitor must be placed in the child's field of vision. We reject this argument because, first, *Miguel* had nothing to do with the place-

ment of TV monitors. The availability of two-way television was mentioned only in passing. The issue in *Miguel* concerned the right to contemporaneous communication between the defendant and his lawyer—a right, by the way, that was scrupulously protected at Etimani's trial by the use of headsets. Second, S.E. *was,* in fact, "exposed to the defendant's televised image," and not just in some technical, hyper-literal way. To repeat, the defendant's presence on the television was called to her attention, she could easily look at it, she *did* look at it, and she testified to what she saw.

We also reject Etimani's argument that the district court was required to make special, additional findings if the monitor is not to be placed in the child's field of vision. This argument fails because, as we have shown, Congress did not require the monitor to be placed in the child's field of vision in the first place. No special findings were required to justify the placement of the monitor where it was.

■ In sum, we hold that 18 U.S.C. § 3509 is not unconstitutional. We also hold that § 3509 does not require that the television monitor in the witness room be located directly in the child's field of vision while she testifies. Rather, it is sufficient (1) if the presence of the monitor has been called to the child's attention, (2) if the child can see the monitor, if she wishes, with little effort from where she is seated while testifying, and (3) if the jury is able to observe whether or not the child looks at the monitor during her testimony. In this case, all of those conditions were met. There was no error.

## IV. Motion for Judgment of Acquittal and Post-verdict subpoena request

Etimani argues that the district court should have granted a motion for judgment of acquittal on the ground that the

government had not sufficiently proven that the crime occurred on the date alleged in the indictment. He also appeals the denial of his Rule 17(b) request for a subpoena.

Six months after the verdict and just prior to sentencing, Etimani filed a Rule 17(b) request to subpoena a Judge Advocate General officer to testify in support of his renewed motion for judgment of acquittal that no military records corroborated S.E.'s mother's testimony that she was on military field training on the dates she indicated. Etimani argues that the district court erred in denying his post-verdict request for a subpoena. We review the district court's denial of a request for a Rule 17(b) subpoena for an abuse of discretion. *United States v. Weischedel,* 201 F.3d 1250, 1255 (9th Cir.2000).

■ There was no abuse of discretion here. The time to present evidence that can supposedly impeach a witness is *during* the trial, not afterward. Etimani has offered no satisfactory explanation for why he did not seek to obtain this readily available evidence earlier. Etimani's motion, filed six months after the verdict, was untimely. *Cf. United States v. Jones,* 487 F.2d 676, 679 (9th Cir.1973) (holding that the district court did not abuse its discretion by denying a request made on the final day of trial when that request could have been made earlier). Moreover, the testimony Etimani sought was of dubious probative value. At best, a JAG officer would have testified that no records either supported or contradicted S.E.'s mother's testimony that she was away on field training in April 1997.

■ As for the motion for judgment of acquittal, S.E.'s testimony, and that of her mother, provided sufficient evidence from which a rational jury could find that the offense occurred during the time period

alleged in the indictment. The district court did not abuse its discretion in denying the motion for subpoena or the motion for judgment of acquittal.

## V. Cross appeal

The government cross-appeals the district court's refusal to treat Etimani's prior California conviction for "lewd and lascivious conduct upon a child" as a predicate conviction for the two-strikes sentencing enhancement called for in 18 U.S.C. § 2241(c).

At sentencing, the government argued that Etimani was subject to a mandatory sentence of life imprisonment pursuant to § 2241(c).[5] This was because Etimani previously had been convicted in California state court of "lewd and lascivious conduct upon a child" in violation of Cal.Penal Code § 288(a),[6] which, the government argued, was a previous conviction of a "sexual act" on a minor. The government contended that Etimani's new conviction, coupled with his prior California conviction, triggered the "two strikes" enhancement of 18 U.S.C. § 2241(c).

The district court ruled that Etimani's state court conviction of "lewd and lascivious conduct upon a child" did not qualify as a predicate offense because the California crime did not necessarily fall within the federal definition of a "sexual act" on a minor. The federal definition of "sexual act" requires skin-to-skin contact. In contrast, under California law, "lewd and lascivious conduct upon a child" can be committed *either* by skin-to-skin contact *or* by improper touching over the clothing. Therefore, a conviction of the California crime did not necessarily trigger the enhancement. The government offered various items of documentation, e.g., state and federal pre-sentence reports, a preliminary hearing transcript, and records from Etimani's no-contest plea, all in an effort to show that, *as a matter of fact*, Etimani, had, indeed, committed a sexual act. Noting the lack of a transcript of the change of plea proceeding, the district court ruled that the government failed to show that Etimani's state court conviction qualified as a predicate offense for purposes of triggering the mandatory life sentence provision of 18 U.S.C. § 2241(c).

---

**5.** 18 U.S.C. § 2241(c) states:

(c) With children.—Whoever crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years, or in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly engages in a sexual act with another person who has not attained the age of 12 years, or knowingly engages in a sexual act under the circumstances described in subsections (a) and (b) with another person who has attained the age of 12 years but has not attained the age of 16 years (and is at least 4 years younger than the person so engaging), or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both. *If the defendant has previously been convicted of another Federal offense under this subsection, or of a State offense that would have been an offense un-*

*der either such provision had the offense occurred in a Federal prison, unless the death penalty is imposed, the defendant shall be sentenced to life in prison.*

18 U.S.C. § 2241(c) (emphasis added).

**6.** At the time Etimani committed the California crime, California Penal Code § 288(a) stated:

(a) Any person who shall willfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six, or eight years.

Cal.Penal Code § 288(a) (1988).

■ We review de novo whether a prior conviction qualifies as a predicate felony. *United States v. Franklin*, 235 F.3d 1165, 1169 (9th Cir.2000).

"For a second offender [with a qualifying predicate conviction], ... § 2241(c) has an obligatory sentence of life imprisonment." *United States v. Downer*, 143 F.3d 819, 821 (4th Cir.1998); *cf. Almendarez-Torres v. United States*, 523 U.S. 224, 236, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (citing § 2241(c) as an example of a statute that carries a "mandatory life" sentence for second offenders). The statute provides in relevant part:

If the defendant has previously been convicted of another Federal offense under this subsection, or of a State offense that would have been an offense under either such provision had the offense occurred in a Federal prison, unless the death penalty is imposed, the defendant shall be sentenced to life in prison.

18 U.S.C. § 2241(c).

The phrase "under either such provision" in § 2241(c) refers to §§ 2241(c) and 2243(a),[7] both of which depend on the commission of a "sexual act" rather than "sexual contact" as defined in § 2246. A "sexual act" involves direct skin-to-skin touching; whereas, "sexual contact" may include touching through clothing. 18 U.S.C. § 2246(2)-(3). Therefore, for Etimani's conviction to be a qualifying prior offense under § 2241(c), the prior conviction must be for a "sexual act."

To determine whether the prior conviction qualifies as an enhancer, we generally look only to the *fact of conviction* and the statutory definition of the prior offense, not the facts of the defendant's conduct. *Taylor v. United States*, 495 U.S. 575, 599, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1995). As we have seen, California Penal Code § 288(a) covers both the commission of sexual acts and sexual contact as defined by 18 U.S.C. § 2241(c). *See* Cal.Penal Code § 288(a); *People v. Martinez*, 11 Cal.4th 434, 45 Cal.Rptr.2d 905, 903 P.2d 1037, 1042 (1995) (holding that a lewd or lascivious action under § 288(a) can occur through a victim's clothing). Thus, it reaches conduct that may not qualify as a predicate offense under § 2241(c).

In *Taylor*, the Supreme Court held that the "categorical approach" of looking only to the mere fact of conviction did not prohibit a sentencing court from examining the charging document and jury instructions from a prior conviction to see what the jury necessarily found. *Taylor*, 495 U.S. at 599–600, 110 S.Ct. 2143. Following the lead of *Taylor*, "this circuit explicitly has expanded the types of documents that may permissibly be reviewed to determine whether a defendant was actually convicted of predicate crimes." *Franklin*, 235 F.3d at 1170. The sentencing court may consider "documentation or judicially noticeable facts that clearly establish that the predicate conviction qualified under [the statute]." *Id.* (quoting *United States v. Sweeten*, 933 F.2d 765, 769 (9th Cir.1991)) (internal quotation marks omitted). The district court may consider the charging papers, judgments of conviction, signed guilty pleas and transcripts from plea pro-

---

**7.** Section 2243(a) provides:

(a) Of a minor.—Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly engages in a sexual act with another person who—

    (1) has attained the age of 12 years but has not attained the age of 16 years; and

(2) is at least four years younger than the person so engaging;

or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

18 U.S.C. § 2243(a) (2003).

ceedings under the second prong of the *Taylor* test. *United States v. Bonat,* 106 F.3d 1472, 1476–77 (9th Cir.1997) (district court may consider transcript from plea proceedings as it is no more of a factual inquiry than examining a signed plea statement); *United States v. O'Neal,* 937 F.2d 1369, 1373 (9th Cir.1991), *abrogated on other grounds, United States v. Sahakian,* 965 F.2d 740 (9th Cir.1992) (district court can consider indictment or other charging papers and judgment of conviction); *United States v. Sweeten,* 933 F.2d 765, 769 (9th Cir.1991) (consideration of a signed guilty plea along with the indictment that parallels the language of the guilty plea did not contradict the formal categorical approach mandated by *Taylor* ).

According to the records of the Superior Court of California in Santa Clara County, on December 7, 1992, Etimani was charged by Information with four counts of "lewd and lascivious conduct upon a child," in violation of Cal.Penal Code § 288(a). The court records show that on March 2, 1993, Etimani pled no-contest to Count 1, in exchange for which the remaining counts were dismissed. Count 1 of the Information alleged:

> On or between January 1, 1991 and December 31, 1991, in the County of Santa Clara, State of California, the crime of LEWD AND LASCIVIOUS CONDUCT UPON A CHILD, in violation of PENAL CODE SECTION 288(A), a FELONY, was committed by JOHNNY ETIMANI, who did wilfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of ANNIE E., a child under the age of fourteen

years, to wit: 10 AND 11 years of age, with the intent of arousing, appealing to, and gratifying the lust, passion, and sexual desires of the said defendant and of said child.

■ Because, as we have seen, under California law, "lewd and lascivious conduct upon a child" can be committed either as a sexual act (skin-to-skin contact) or as sexual conduct (through clothing), it is not possible to tell, solely by reading the Information in tandem with the judgment of conviction, whether Etimani was convicted of the "sexual act" or "sexual contact" species of the offense. Had the Information charged skin-to-skin contact, a no-contest or guilty plea to the crime *as charged* would have removed the ambiguity, but that is not the case here. Likewise, if Etimani's conviction had derived from a jury verdict, it might have been possible to discern what acts Etimani was found to have committed by examining the form-of-verdict along with the jury instructions. Read together, the verdict and the instructions might have shown what the jury necessarily found, but that is not the situation here, either. Sometimes, plea agreements contain a written statement of the factual basis for the plea, but that, too, is not what we have. As the district judge noted, a transcript of Etimani's plea of no-contest might have clarified the exact nature of his prior conviction, but none was provided. Under these circumstances, the district court correctly ruled that the government failed to establish that the California prior conviction qualified as predicate offense for purposes of § 2241(c).

AFFIRMED.