**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0941n.06

**No. 11-5367**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Aug 23, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| CHRISTOPHER AMOS, | ) | District of Tennessee |
| | ) | |
| Defendant-Appellee. | ) | |

Before:     BOGGS, GILMAN, and DONALD, Circuit Judges.

BOGGS, Circuit Judge.  This case deals with how a district court can, for the purpose of determining whether a defendant should be sentenced as an armed career criminal, consider a probable-cause affidavit incorporated by reference into a prior sentencing hearing.  Because the defendant stipulated the facts in the probable-cause affidavit as true, we hold that it can consider the document in this case.  Based on this determination, we reverse the district court's judgment and remand for resentencing.

I

On September 2, 2008, Christopher Amos and his girlfriend, Michelle Quigley, were pulled over by police officers for a traffic stop.[1]  Quigley,  who was driving, did not have a driver's license.

---

[1]The facts, unless otherwise noted, are undisputed and are taken from Amos's presentence report.

The officers arrested Quigley for not having a driver's license, and they asked Amos and Quigley to get out of the car. The officers put Amos and Quigley in the police cruiser and then searched Amos's car. They found a .45-caliber semi-automatic pistol on the back seat of the car.

On October 8, 2008, a grand jury returned an indictment against Amos for knowingly possessing a firearm while being a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On April 2, 2009, Amos appeared before the district court and pleaded guilty without the benefit of a plea agreement.

In May 2009, Amos moved to withdraw his guilty plea. He argued that the Supreme Court's ruling in *Arizona v. Gant*, 556 U.S. 332 (2009), which was entered after he was stopped, made the search of his car unconstitutional. The court held a change-of-plea hearing on the motion, and, in January 2010, the district court granted Amos's motion.

Amos then moved to suppress the evidence found in his car, arguing that the officers did not search his car until he and Quigley were secured in the back of the patrol car and that the reason for his traffic stop would not provide reasonable suspicion for the officers to believe illegal items would be found in his car. The district court accepted the magistrate judge's report and recommendation to deny Amos's motion. The report stated that, although the search violated *Gant* and the parties agreed that *Gant* applied retroactively, the officers were nonetheless acting in good-faith reliance on the law that existed at the time of the search.

After his motion to suppress was denied, Amos reached a plea agreement with the government. He reserved the right to appeal the denial of his suppression motion. In accordance with the agreement, he again changed his plea to guilty.

The probation officer issued a presentence report for Amos on April 28, 2011. The report calculated Amos's base offense level as 24, but enhanced the offense level to 33 because Amos qualified as an armed career criminal under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1).[2]

In order to be sentenced as an armed career criminal, a defendant must have been convicted of at least three predicate offenses that qualify under the ACCA. The description of Amos's predicate offenses is as follows.

The presentence report stated that Amos was arrested on May 30, 1997, and that he pleaded no contest, in the Circuit Court of Polk County, Florida, to (1) resisting an officer without violence; (2) resisting an officer with violence, a "violent felony" for purposes of § 922(g)(1); and (3) possession of methamphetamine.

The presentence report further stated that Amos was again arrested on December 15, 1997, and that he pleaded nolo contendere, in the Circuit Court of Polk County, Florida, to (1) burglary; (2) aggravated assault, a "violent felony" for purposes of § 922(g)(1); (3) resisting an officer with violence, a "violent felony" for purposes of § 922(g)(1); (4) aggravated assault on a law-enforcement officer, a "violent felony" for purposes of § 922(g)(1); and (5) being a felon in possession of a firearm. The presentence report described the facts surrounding Amos's offense as follows:

> On December 15, 1997, Amos unlawfully entered and took possession of a vehicle belonging to Willie Fraser. He was in possession of a shotgun . . . . He drove to the

---

[2]The Armed Career Criminal Act provides for an enhanced penalty where a defendant has "three previous convictions . . . for a violent felony . . . committed on occasions different from one another . . . ." 18 U.S.C. § 924(e)(1).

parking lot of a McDonald's . . ., where he pointed the shotgun at the victim, Joe King. . . . A traffic stop was attempted and Amos fled, becoming stuck in the mud at an RV park. He then displayed his shotgun to a deputy, who took cover. The defendant refused to comply with the deputy's verbal commands. When he freed the vehicle, Amos fled the RV park . . . . The officers attempted to stop the vehicle using "stop sticks", [sic] and Amos fired the shotgun out the window of the truck from approximately 25 feet away. While attempting to elude deputies, the vehicle stopped because the defendant was unable to turn the steering wheel. He then backed the vehicle up at a high rate of speed, traveling directly toward one deputy. The vehicle . . . got stuck in a wooded area. Amos refused to exit the vehicle for over five hours and pointed the weapon at SWAT team members . . . .

When Amos pleaded nolo contendere to the charges stemming from his December 15, 1997 arrest, he stipulated to the facts describing his actions contained in a probable-cause affidavit produced by law enforcement on the day he was arrested. These were the facts that the Florida judge relied on to provide a basis for Amos's plea. The relevant portion of the hearing is as follows:

The Court: . . . Okay. I'll accept your plea of no contest.

. . . .

The Court: . . . Finding that your pleas are freely and voluntarily made. [sic] Let me see if there's a factual basis to each of these offenses in the probable cause affidavit.

Ms. Buegher [Amos's counsel]: Your Honor, I've gone over the probable cause affidavit with him. I would stipulate to a prima facie basis for each of the counts to which he has pled [burglary, resisting an officer with violence, aggravated assault, and being a felon in possession of a firearm].

Mr. Kirkland [state attorney]: And there's been about 20 depositions taken on this case, Your Honor.

Ms. Buegher: I think they also support it, that's correct.

The Court: Okay. I'll find that the probable cause does reach a factual basis from the probable cause affidavit.

> Mr. Amos, they claim you contend when this happened you were on probation for possession of amphetamine and methamphetamine and resisting arrest with force or violence, and you violated that probation by committing the new offense which you just pled no contest to. Is that what you did?
>
> The Defendant: Yes, sir.

Based on these facts, the presentence report determined that Amos had three prior violent felonies that occurred on occasions different from one another, as required by the Armed Career Criminal Act (ACCA). The presentence report determined that these felonies were: (1) resisting an officer with violence, stemming from Amos's May 30, 1997 arrest; (2) aggravated assault, stemming from Amos's December 15, 1997 arrest; and (3) aggravated assault on a law-enforcement officer, also stemming from Amos's December 15, 1997 arrest.

Amos filed objections to the presentence report. In his second objection, the objection at issue on appeal, he argued that the presentence report was in error when it determined that he qualified as an armed career criminal. He argued that the two felony convictions stemming from his December 15, 1997, arrest "should not be counted as separate felony offenses."

The district court held a hearing on Amos's objections to the presentence report on February 23, 2011. The main thrust of Amos's second objection was that the district court could not determine whether the violent felonies committed on December 15, 1997, were committed on "occasions different from one another," a necessary finding for purposes of the ACCA,[3] unless it

---

[3]Amos does not now, nor has he ever, argued that the prior convictions do not constitute "violent felonies" under the ACC; he argues only that they were not committed on "occasions different from one another." Resisting an officer with violence has been held to be a "violent felony" under the ACCA. *United States v. Boese*, No. 98-5883, 1999 WL 617961, at *2 (6th Cir. Aug. 12, 1999); *United States v. Romo-Villalobos*, 674 F.3d 1246, 1251 (11th Cir. 2012) (holding that the

looked at the probable-cause affidavit that the sentencing court in Florida had used as the factual basis for Amos's no-contest plea. Though Amos stipulated to the facts in the probable-cause affidavit in open court when he pleaded no contest, and the Florida sentencing judge expressly stated in the hearing that he was using the probable-cause affidavit as the factual basis for accepting Amos's no-contest plea, Amos still argued that the district court was not allowed to examine this probable-cause affidavit to now determine whether the felonies took place on occasions different from one another.

Amos based his argument on *Shepard v. United States*, 544 U.S. 13 (2005), which holds that a court is limited in what documents it can examine for purposes of determining whether prior felonies "count" under the ACCA. Amos argued that the probable-cause affidavit was not *Shepard*-approved because it was "an arrest report . . . not a court document." Further, Amos argued that although he stipulated to the facts in the probable-cause affidavit, he "never specifically admit[ted] to the facts . . . as to what he was actually convicted of." Amos argued that a Sixth Circuit case, *United States v. Medina-Almaguer*, 559 F.3d 420 (6th Cir. 2009), which rejected the use of a preliminary-examination transcript as merely providing a "gateway" to probable cause for the offense, was similar to his case.

The government argued that the district court was permitted to examine the probable-cause affidavit to determine whether Amos's felonies had taken place on occasions different from one another. The government argued that the transcript of the plea colloquy was a permissible document

Florida statute for resisting an officer with violence constitutes a "violent felony" under the ACCA).

under *Shepard*'s plain terms, and that the probable-cause affidavit had been incorporated into the plea colloquy, and "made part of the judicial record," when Amos stipulated to its facts as the basis for his plea. However, the government conceded that, if the district court did not consider the probable-cause affidavit, it could not make a determination that Amos's felonies took place on "occasions different from one another," because the felonies all occurred on the same date and none of the other documents the court was permitted to examine provided adequate facts to show that they were committed on separate "occasions."

The district court determined that it could not examine the probable-cause affidavit under *Shepard*. The court held that the government had not satisfied its burden of proving by a preponderance of the evidence that the ACCA sentencing enhancement should apply. The court was troubled that although the probable-cause affidavit was stipulated to in the Florida plea colloquy, Amos never "specifically admitted [and] the state court judge [n]ever expressly discussed the specific facts relating to the defendant's offenses or gave any indication as to whether his offenses constituted single or multiple criminal offenses."

As a result, the court sustained Amos's second objection to the presentence report, and agreed that it was not able to determine that Amos was an armed career criminal. Amos's base offense level was recalculated to be 24, and his total offense level was 25, with a guidelines range of 84 to 105 months of imprisonment. He was sentenced to 105 months of imprisonment.

The United States timely appealed the district court's sentencing decision.

II

The Armed Career Criminal Act provides for an enhanced penalty where a defendant has "three previous convictions . . . for a violent felony . . . committed on occasions different from one another . . . ." 18 U.S.C. § 924(e)(1). This circuit holds that violent felonies, as defined under the act, were committed on "occasions different from one another" if: (1) "it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins;" (2) "if it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw from committing the second offense;" or (3) "the offenses are committed in different residences or business locations." *United States v. Hill*, 440 F.3d 292, 297 (6th Cir. 2006).

Thus, it is possible for two "occasions," under the ACCA, to occur on the same day, or even within a relatively short period of time on the same day. *See, e.g.*, *United States v. Brady*, 988 F.2d 664, 669 (6th Cir. 1993) (en banc) (holding that two armed robberies of two different, neighboring businesses, committed by the defendant within thirty minutes of one another, were committed on "occasions different from one another" for purposes of the ACCA).

To determine, however, whether a defendant qualifies as an armed career criminal—whether, in other words, he has committed three prior violent felonies on occasions different from one another—a court may look at only certain documents, as discussed in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005). *Shepard* is the appropriate

precedent to use when a defendant has pleaded guilty or nolo contendere. Therefore, a brief discussion of *Shepard*'s requirements is warranted.[4]

*Shepard* held that a court, when determining whether a prior guilty plea was admitted, was limited to "examining the statutory definition [of the offense], charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16. Since *Shepard*, this court has held that if a defendant, during his plea colloquy, stipulates to the accuracy of a document describing the facts of his offense conduct, and the sentencing court relies on those facts as forming the basis of defendant's plea, then the document that the defendant stipulated to and the court relied on is acceptable under *Shepard* as a basis for a federal court's sentence under the ACCA. *United States v. Kappell*, 418 F.3d 550, 558 (6th Cir. 2005).

In *Kappell*, Kappell was found guilty by a jury of multiple counts of child abuse. *Id.* at 552. Kappell was sentenced to a mandatory term of life in prison because he had previously been convicted, on a plea of "no contest," of sexual abuse of a child under the age of 12. *Id.* at 558; *see* 18 U.S.C. § 2241(c). Kappell argued on appeal that the district court was barred by *Shepard* from examining the "criminal complaint" that "contained facts reported by investigating officers." *Ibid.* Indeed, such a document is not included in *Shepard*'s permissible documents, which are only "the

---

[4]Neither the Supreme Court nor this circuit have addressed whether *Shepard*'s limitations apply not only to whether a prior offense was a violent felony under the ACCA, but also to whether two or more prior offenses occurred on occasions different from one another under the ACCA. *United States v. Jones*, 453 F.3d 777, 780 (6th Cir. 2006) (noting that the issue was undecided). However, we need not decide the issue today because the probable-cause affidavit at issue became a *Shepard*-approved document when incorporated by reference at the plea colloquy.

statutory definition [of the offense], charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16. However, the criminal complaint had been referred to at the plea hearing for Kappell's prior child-abuse conviction, where he pleaded no contest to the charge. *Kappell*, 418 F.3d at 558. At that hearing, "Kappell, speaking through his lawyer, stipulated that the facts recited in the complaint were correct for purposes of entering his plea." *Ibid.* Based on its examination of these facts, the district court determined that Kappell's prior sexual abuse conviction made him eligible for the mandatory life sentence under 18 U.S.C. § 2241(c), and the court sentenced him accordingly.

On appeal, Kappell argued that the district court erred when it considered the criminal complaint from his prior sexual abuse conviction because the complaint was barred by *Shepard*. We disagreed, and stated:

> [W]e conclude that the materials that the district court relied upon in enhancing Kappell's sentence to life imprisonment were permissible and appropriate even under *Taylor* and *Shepard*. In determining that the state offense of which Kappell was convicted also would have been an offense under [18 U.S.C. § 2241(c)], the district court had before it the state criminal complaint, a transcript of the state plea proceedings, and Kappell's *acceptance in those proceedings of the factual statements in the complaint.* We know of no convincing reason why the district court could not properly rely on those records in making its predicate offense determination.

*Id.* at 560 (emphasis added). The opinion recited the relevant portion of the state plea hearing, where Kappell stipulated, through his lawyer, as follows:

> The Court: Are you convinced, Mr. Haacke [Kappell's attorney], that [Kappell] understands this process today?
>
> Mr. Haacke: I believe he does.

> The Court: Do you want to read further the charge that he is going to be pleading to then *and the facts of it*?
>
> Mr. Haacke: We are probably willing to stipulate that the *facts contained in the Complaint could act as a basis for the finding in this case.*
>
> The Court: And he understands these facts?
>
> Mr. Haacke: I believe he does.
>
> The Court: Based on his understanding, then the Court will accept the waiver of the reading and will then accept the change of plea from not guilty on count one to no contest.

*Ibid.* (emphasis added).

The Sixth Circuit, in determining that it was appropriate for the district court to examine the complaint containing the facts to which Kappell stipulated, noted that Kappell was present at the hearing, that he had answered the judge's questions previously, and that he did not object to his lawyer's stipulation to the facts. *Ibid.* (citing *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and the elements of the charge to which he is pleading guilty.")).

Finally, Kappell argued on appeal that the facts should not be admitted because he pleaded no contest in the state court, rather than guilty. However, the Sixth Circuit disagreed, stating that "for purposes of determining which judicial records a sentencing court may properly consider . . . a plea of nolo contendere has a similar legal effect as pleading guilty." *Id.* at 560–61 (internal quotation marks omitted).

Amos's case is extremely similar to *Kappell*, and we determine that *Kappell* is controlling. In Amos's case, the district court could not determine whether Amos had committed three violent felonies on occasions different from one another without looking at the probable-cause affidavit that Amos stipulated to as the basis for his Florida plea. This is because Amos committed numerous acts, each possibly criminal, on the same day in 1997. The charging document alone did not give facts to allow the district court to determine whether Amos committed the multiple felonies in one violent spree, or whether in fact he committed felonies on different "occasions" on the same day. Similarly, without the facts in the probable-cause affidavit, whether ascertained by stipulation, testimony, or individual admission, the state court could not have accepted a plea to each of the charged offenses and sentenced him accordingly.

However, like Kappell, Amos did stipulate to the facts in the probable-cause affidavit during his Florida sentencing hearing. Like Kappell, Amos was present at the hearing, and he answered the judge's questions when asked. In fact, as shown above, he answered a question immediately after the stipulation to the facts in the probable-cause affidavit. Moreover, the judge's acceptance of the probable-cause affidavit as Amos's stipulation to the facts underlying the charges is basically identical to the exchange in *Kappell*. Just as the complaint was deemed a proper *Shepard* document in *Kappell*, the probable-cause affidavit is clearly a proper *Shepard* document in Amos's case.

Amos argues that *Kappell* is not controlling. He argues first that the fact that he pleaded nolo contendere in the Florida court affects whether a court can incorporate by reference the probable-cause statement, implying that a nolo contendere plea should be treated as though it only admits the elements of the charge and not the underlying facts.

Nolo contendere pleas are treated differently in different jurisdictions. *North Carolina v. Alford*, 400 U.S. 25, 36 n.8 (1970) ("Courts have defined the plea of nolo contendere in a variety of different ways . . . ."). To determine what exactly a defendant admits when he pleads nolo contendere, courts look to the law of the jurisdiction where the plea was entered. *See, e.g.*, *United States v. Ferguson*, 681 F.3d 826, 835 (6th Cir. 2012) (analyzing a Michigan no-contest plea under Michigan law). Amos has not provided any caselaw stating how Florida—where Amos entered his plea of nolo contendere—interprets such a plea. In fact, Florida "construe[s]" a plea of nolo contendere "for all practical purposes as a plea of guilty." *Russell v. State*, 233 So. 2d 148, 149 (Fla. App. 1970); *see also United States v. Lester*, 785 F. Supp. 976, 978 n.2 (S.D. Fla. 1991) (collecting cases). Therefore, Amos's argument that his stipulation to the facts in the probable-cause affidavit should be treated differently for his nolo contendere plea than they would be if he had pleaded guilty is unavailing.

Next, Amos cites two Sixth Circuit cases that he claims prove that the probable-cause affidavit was barred by *Shepard*. These are examined in turn.

First, Amos argues that the Sixth Circuit has held that a warrant affidavit was barred under *Shepard*, despite the government's protests to the contrary, in *United States v. McGrattan*, 504 F.3d 608 (6th Cir. 2007). Amos is correct. However, in *McGrattan*, the warrant affidavit was offered as an independent piece of evidence. It was not incorporated by reference into a *Shepard*-approved document—the plea colloquy, in this case. We agree that, had it not been incorporated by stipulation in the plea colloquy, the probable-cause affidavit here would not have been a *Shepard*-approved document. That is not the issue. The probable-cause affidavit was not offered as an independent

- 13 -

piece of evidence, but as facts explicitly stipulated to by Amos during the plea colloquy, and then

adopted by the judge. *McGrattan* is inapposite.

Second, Amos argues that the Sixth Circuit, in *United States v. Medina-Almaguer*, 559 F.3d

at 423, held that a preliminary-examination transcript was barred by *Shepard*. This is true, and for

good reason. In *Medina-Almaguer*, the district court had attempted to determine whether the

defendant had admitted to the facts underlying a drug-trafficking offense. *Id.* at 423. Faced with a

dearth of evidence that could be examined under *Shepard*, the district court looked to a transcript

from the defendant's "preliminary examination." On appeal, we noted that a preliminary

examination

> deals with a gateway step in the criminal process: determining whether probable
> cause exists for detaining a suspect *before a potential indictment or information*. The
> examination takes place *before the state has . . . charg[ed] the defendant with a
> crime, and its purpose is to determine whether there exists probable cause to believe
> that the defendant has committed a felony.*

*Ibid.* (emphasis added) (internal citation and internal quotation marks omitted). Crucially, the Sixth

Circuit stated that Medina-Almaguer did not admit the conduct underlying the finding of probable

cause. *Ibid.* Therefore, the preliminary-examination hearing transcript in *Medina-Almaguer* is

significantly different from the probable-cause affidavit in Amos's case. It was not a transcript of

a plea colloquy, nor were any findings from it incorporated into a later plea colloquy. Moreover, and

most importantly, when Amos stipulated to the facts in the probable-cause affidavit at the plea

colloquy, it was not a mere "gateway" step in the criminal process—it was the final step. Amos

chose to stipulate to the facts in the probable-cause affidavit, and the judge accepted those facts as

the factual basis for Amos's nolo contendere plea, which is, in Florida, the same for all intents and

purposes as a guilty plea. The probable-cause affidavit in this case, stipulated to before the Florida court, is admissible under *Shepard* exactly because the facts within it had been explicitly admitted to by the defendant, in contradistinction to the facts in the preliminary documents *not* admitted to in *McGrattan* or *Medina-Almaguer*. Just as the criminal complaint in *Kappell* could be considered because it contained facts admitted by the defendant, the probable-cause affidavit here could be considered for the same reason.

Amos puts forth a final argument. He bases the argument on the fact that he pleaded to lesser-included offenses in the Florida court. This is true. The following information lists each of the crimes that Amos was originally charged with committing, followed by the disposition of each charge.

1) Charged with: Armed burglary. Pleaded nolo contendere to Burglary, a lesser included offense.

2) Charged with: Grand Theft. There was no prosecution on this offense.

3) Charged with: Aggravated assault. Pleaded nolo contendere to Aggravated Assault.

4) Charged with: Aggravated Assault on a Law Enforcement Officer. Pleaded nolo contendere to Resisting an Officer with Violence, a lesser-included offense.

5) Charged with: Attempted Second-Degree Murder of Law-Enforcement Officer. Pleaded nolo contendere to Aggravated Assault on a Law-Enforcement Officer, a lesser-included offense.

6) Charged with: Discharging Firearm from Vehicle. There was no prosecution for this offense.

7) Charged with: Resisting Officer with Violence. There was no prosecution for this offense.

8) Charged with: Possession of Short-Barrel Shotgun. There was no prosecution for this offense.

9) Charged with: Possession of a Firearm by Convicted Felon. Pleaded nolo contendere to this offense.

At the first federal sentencing hearing, Amos argued that because he pleaded nolo contendere to lesser-included offenses on charges (1), (4), and (5), and not to the original charges, that "Mr. Amos . . . never specifically admit[ted] to the facts . . . as to what he was actually convicted of." Later in the hearing, Amos reiterated that his counsel in the Florida court "stipulat[ed] to a prima facie case for each of the counts *to which he has pled*," implying that the facts to which he stipulated were somehow different or distinct from the facts underlying the offenses of which he was originally charged.[5] We hold that it is the admitted facts that are important for our purposes—not why he admitted them.

Amos did not and has not cited any law stating that stipulated facts should be treated differently depending on whether the defendant stipulated to them for purposes of the charged offenses or lesser-included offenses. It is true that Amos's case is different from *Kappell* in this respect—Kappell pleaded guilty to the offense with which he was charged, not to a lesser-included offense. However, the facts stand as admitted, regardless of the charges to which they relate, so long as the offenses of conviction could count as violent felonies, which no one disputes they could.

---

[5] Amos's nolo contendere pleas to Aggravated Assault (Count 3) and to the lesser-included offense of Aggravated Assault on a Law Enforcement Officer (from Count 5) were the offenses used in determining that Amos was an armed career criminal. Therefore, his argument that pleading to a lesser-included offense should prevent the court from examining the probable-cause affidavit applies only to Count (5).

*Shepard* is very clear that the "transcript of [the] plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented" are acceptable documents for a court to examine to determine whether a prior offense qualifies as a predicate offense for purposes of the ACCA. *Shepard*, 544 U.S. at 16. *Shepard* does not state that the document must reflect only the offenses of which the defendant was actually convicted (as opposed to those with which he was originally charged), or that a defendant's plea to lesser-included offenses makes such a document improper. Amos's stipulation of facts in the trial court unquestionably falls within *Shepard*'s confines. To rule otherwise would be to make *Shepard* more restrictive than it is. We decline to do so.

III

For the foregoing reasons, we REVERSE the district court's judgment and REMAND for resentencing in accordance with this opinion.