NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0194n.06

Case No. 13-5495

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **FILED**<br>Mar 11, 2015<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | **ON APPEAL FROM THE** |
| **v.** | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE EASTERN** |
| **CHRISTOPHER AMOS,** | ) | **DISTRICT OF TENNESSEE** |
| | ) | |
| **Defendant-Appellant**. | ) | |
| | ) | |
| _____ / | ) | |

**Before: KEITH, COOK, and DONALD, Circuit Judges**.

**DAMON J. KEITH, Circuit Judge**.

Defendant Christopher Amos pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), which imposes a ten-year maximum sentence. *See* 18 U.S.C. § 924(a)(2). The district court determined that Amos qualified for an enhanced penalty under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). The ACCA prescribes an enhanced fifteen-year mandatory minimum sentence for armed career criminals, i.e., felons in possession of a firearm who have three or more prior violent felonies committed on separate occasions. *See id.* § 924(e)(1).

Amos appealed. Amos argues that the district court erred in determining that he was an armed career criminal and that, consequently, his fifteen-year minimum sentence exceeds the

otherwise applicable ten-year statutory maximum. The United States moved to dismiss on the ground that Amos's plea agreement has an appeal waiver barring his appeal. For the following reasons, we **DENY AS MOOT** the United States' motion to dismiss and **AFFIRM** the district court's judgment.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

In September 2010, Amos entered into a plea agreement by which he pleaded guilty to being a felon in possession of a firearm. *See* R. at 229.[1] The plea agreement provides that Amos would face a mandatory minimum sentence of fifteen years to life if the district court determined him to be an armed career criminal. By contrast, the plea agreement states that Amos would face a sentence of up to ten years if the district court did not determine him to be an armed career criminal.

The plea agreement has an appeal waiver. Pertinently, the appeal waiver states:

> In consideration of the concessions made by the United States in this agreement, . . . the defendant agrees not to file a direct appeal of the defendant's convictions(s) or sentence except the defendant retains the right to appeal a sentence imposed above . . . any applicable mandatory minimum sentence . . . determined by the district court.

R. at 234–35.

On September 28, 2010, the district court held a plea colloquy under Rule 11 of the Federal Rules of Criminal Procedure. During the plea colloquy, the district judge asked Amos if he understood that he was waiving his right to appeal, and Amos responded affirmatively. R. at 626–27. The district judge further informed Amos that he would not be able to determine an appropriate sentence until receiving the presentence report. R. at 632.

---

[1] "R." designates citations to the paginated record of the proceedings below. Thus, "R. at 234" refers to PageID 234, "R. at 235" refers to PageID 235, and so on.

The probation officer prepared the presentence report. In the report, the probation officer

found that Amos was an armed career criminal under § 924(e) based on three qualifying prior

violent felonies and recommended the fifteen-year statutory minimum. In relevant part, § 924(e)

provides that

> [i]n the case of a person who violates section 922(g) of this title and has three
> previous convictions by any court referred to in section 922(g)(1) of this title for a
> violent felony or a serious drug offense, or both, committed on occasions different
> from one another, such person shall be . . . imprisoned not less than fifteen
> years[.]

18 U.S.C. § 924(e)(1).

The presentence report outlined Amos's qualifying prior violent felonies. According to

the report, Amos was arrested on May 30, 1997 and, based on this arrest, pleaded no contest in

Florida state court to "resisting an officer with violence." *United States v. Amos*, 496 F. App'x

517, 519 (6th Cir. 2012). The report further stated that Amos was arrested on December 15,

1997. In connection with this arrest, Amos pleaded nolo contendere in the same court to, among

other offenses, (1) aggravated assault and (2) "aggravated assault on a law-enforcement officer."

*Id.* The report concluded that the three abovementioned offenses constituted violent felonies

under § 924(e). *Id.* at 520.

Amos objected to the determination that the two offenses stemming from his December

15 arrest were qualifying violent felonies. Amos asserted that there was no factual basis for the

determination that he committed these two violent felonies on "occasions different from one

another" as required for an ACCA enhancement to apply. *Id.* In Amos's estimation, there was no

factual basis to determine that he committed these two felonies on separate occasions because the

only potential basis for this determination was the probable cause affidavit that provided the

factual foundation for his plea of nolo contendere in state court. *Id.* But, according to Amos, the district court could not consider the probable cause affidavit in sentencing him.

Amos based this argument on the Supreme Court's decision in *Shepard v. United States*, 544 U.S. 13 (2005). In *Shepard*, a plurality of the Court generally held that courts may consider only certain documents to determine whether prior felonies qualify under the ACCA. *See id.* at 26 (plurality opinion); *Amos*, 496 F. App'x at 520. These documents typically include "the statutory definition [of the offense], charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Amos*, 496 F. App'x at 522 (internal quotation marks omitted) (citing *Shepard*, 544 U.S. at 16).[2] The district court agreed with Amos that the probable cause affidavit was not a *Shepard*-approved document. *Id.* at 521. Accordingly, in March 2011, the district court sentenced Amos to 105 months in prison, fewer than the 120-month, or ten-year, statutory maximum for unenhanced felon-in-possession convictions. *See* R. at 316.

The United States appealed this decision. We held that the probable cause affidavit qualified as a *Shepard* document. *Amos*, 496 F. App'x at 523–26. In so holding, we noted that *Shepard* plainly authorized transcripts of plea colloquies and "any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 526. We reasoned that these definitions applied to the probable cause affidavit because Amos stipulated to its facts during the Florida plea colloquy. *See id.* at 524–26. Thus, we reversed the district court's judgment and remanded for resentencing. *See id.* at 526.

In April 2013, the district court held a resentencing hearing at which it considered the probable cause affidavit. According to the affidavit, on December 15, 1997, Amos stole a pickup

---

[2] Courts generally refer to these documents as "*Shepard*-approved documents" or "*Shepard* documents."

truck while possessing a shotgun. R. at 273; *see also Amos*, 496 F. App'x at 519. Amos drove to a McDonalds parking lot and pointed his shotgun at Joe King, placing King in fear of his life. R. at 273. Deputy Sheriff Kelly Boone attempted to stop Amos, but Amos fled to a nearby RV park and got stuck in the mud. *Id.* Then, Amos displayed his shotgun to Boone, causing Boone to take cover. *Id.* Amos freed his vehicle from the mud and regained the roadway. *Id.* Sheriff Sergeant Clyde Nichols attempted to deploy stop sticks, but had to take cover when Amos recklessly fired the shotgun out of his window from twenty-five feet away. *Id.* Amos's vehicle came to a rest in a nearby wooded area, where he was apprehended after a five-hour standoff. R. at 273–74.

At the resentencing hearing, Amos argued that these undisputed facts failed to show that he committed the offenses against King (aggravated assault), Boone (resisting an officer with violence), and Clyde (aggravated assault on a law enforcement officer) on separate occasions for ACCA purposes. Rather, Amos argued that he committed these felonies during a single criminal episode. The district court rejected this argument and held that Amos committed these three offenses "on occasions different from one another" under § 924(e). R. at 599–604. Accordingly, the district court sentenced Amos to the ACCA's mandatory minimum fifteen-year term. R. at 549.[3]

---

[3] The district court held that three of Amos's convictions stemming from the December 15 arrest qualified as prior violent felonies under the ACCA (aggravated assault, resisting an officer with violence, and aggravated assault on a law enforcement officer). By contrast, the presentence report concluded that only two of the convictions based on the December 15 arrest were qualifying prior violent felonies (aggravated assault and aggravated assault on a law enforcement officer). This difference is immaterial to our analysis. Although Amos disputes whether he committed the offenses stemming from the December 15 arrest "on occasions different from one another" for ACCA purposes, Amos does not dispute that these offenses constitute predicate "violent felonies" within the meaning of § 924(e). Likewise, Amos does not dispute that his conviction for resisting an officer with violence based on the May 30 arrest qualifies as a predicate violent felony, or that he committed it on a different occasion from the December 15 offenses. Additionally, as further explained below, the undisputed facts in the probable cause affidavit show that Amos committed at least the offenses against King (aggravated assault) and Clyde (aggravated assault on a law enforcement officer) on separate occasions under the ACCA. Therefore, irrespective of whether

Amos appealed again. The United States filed a motion to dismiss based on the plea agreement's appeal waiver. The motion to dismiss was referred to the merits panel. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.    ANALYSIS

Criminal defendants may waive the right to appeal. "Any right, even a constitutional right, may be surrendered in a plea agreement if that waiver was made knowingly and voluntarily." *United States v. Ashe*, 47 F.3d 770, 775–76 (6th Cir. 1995) (citations omitted). Thus, "[c]riminal defendants may waive their right to appeal as part of a plea agreement so long as the waiver is made knowingly and voluntarily." *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004) (citation omitted). To determine whether an appeal waiver is knowing and voluntary, we consider both the appeal waiver and the plea colloquy. *See United States v. Apodaca*, 512 F. App'x 509, 516 (6th Cir. 2013) (citations omitted). We review "whether a defendant waived his right to appeal his sentence in a valid plea agreement *de novo*." *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005) (citation omitted).

Rule 11 of the Federal Rules of Criminal Procedure sets forth the basic requirements for an appeal waiver to be knowing and voluntary. Under Rule 11, before accepting a plea of guilty or nolo contendere, the district court "must address the defendant personally in open court . . . [and] determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal . . . ." Fed. R. Crim. P. 11(b)(1), (N). The district court may satisfy this standard by (1) expressly informing the defendant that he waives his right to appeal by pleading guilty, (2) ensuring that the defendant understands this consequence by his

---

Amos committed two or three qualifying prior violent felonies on December 15, the record establishes that Amos committed at least the required three prior violent felonies under § 924(e).

acknowledgement thereof, and (3) confirming that the defendant still desires to plead guilty. *See United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006).

Because they are terms of plea agreements, courts interpret appeal waivers under contract law principles. *United States v. Mathews*, 534 F. App'x 418, 424 (6th Cir. 2013) (citing *United States v. Bowman*, 634 F.3d 357, 360 (6th Cir. 2011)). Thus, as a general rule, we "give effect to the intent of the parties as expressed by the plain language in the [appeal waiver]." *United States v. Beals*, 698 F.3d 248, 256 (6th Cir. 2012) (citation omitted). Nevertheless, appeal waivers must be "interpreted strictly, with ambiguities construed against the government." *See United States v. Caruthers*, 458 F.3d 459, 470 (6th Cir. 2006) (citing cases). This strict construction reflects plea agreements'—and, by extension, appeal waivers'—"constitutional and supervisory implications" and the concerns appeal waivers raise "over and above those present in the traditional contract context." *United States v. Freeman*, 640 F.3d 180, 194 (6th Cir. 2011) (citation omitted) (internal quotation marks omitted).

Consistent with this supervisory responsibility, we have held that appeal waivers do not bar defendants from appealing a sentence above the statutory maximum for the underlying offense. *Caruthers*, 458 F.3d at 471 (citing cases). However, we have yet to settle whether a district court's error in determining a defendant to be an armed career criminal results in a supramaximal sentence, thereby barring an appeal waiver. *See id.* at 472; *see also United States v. Stark*, 307 F. App'x 935, 938 (6th Cir. 2009).

There are two basic views concerning this question. The first view proposes that appeal waivers do not bar a defendant from arguing on appeal that the district court erroneously determined him to be an armed career criminal, thus causing him to receive a sentence above the otherwise applicable ten-year statutory maximum. *See Caruthers*, 458 F.3d at 472. This view

presupposes that convictions for being a felon in possession of a firearm and ACCA enhancements are different offenses. *Id.* at 472. A ten-year statutory maximum applies to felon-in-possession convictions under § 922(g)(1). *See* 18 U.S.C. § 924(a)(2). However, the ACCA imposes an enhanced fifteen-year mandatory minimum for armed career criminals. *Id.* § 924(e)(1). Consequently, if a district court erroneously determines that a defendant is an armed career criminal, the minimum fifteen-year sentence would exceed the ten-year maximum for felons in possession of a firearm.

The second view, by contrast, proposes that erroneous ACCA enhancements of felon-in-possession convictions do not bar appeal waivers unless the district court imposes a sentence above life imprisonment. *See Caruthers*, 458 F.3d at 472. This view presupposes that "being a felon in possession of a firearm and being an armed career criminal in possession of a firearm are not two separate offenses, but simply recidivism-contingent variants of the same offense." *Id.*; *see also United States v. McMurray*, 653 F.3d 367, 371 (6th Cir. 2011) (citing cases) ("That the ACCA is a sentence enhancement rather than a separate offense is well established."). Thus, under the second view, the "statutory maximum for purposes of the waiver inquiry is the life-imprisonment maximum for being an armed career criminal in possession of a firearm[.]" *Caruthers*, 458 F.3d at 472 (citations omitted).

Here, we assume, without deciding, that the first view is correct. Therefore, we decide Amos's claims on the merits. *See id.*; *Stark*, 307 F. App'x at 938–39.

Amos argues that the appeal waiver is unenforceable for two reasons. First, Amos contends that a Supreme Court decision decided after his resentencing proposes that courts may not use probable cause affidavits to determine whether defendants committed violent felonies on separate occasions for ACCA purposes. *See generally Descamps v. United States*, 133 S. Ct.

2276 (2013). Alternatively, Amos argues that, even if the district court could use the probable cause affidavit, it misapplied the applicable test in concluding that he committed the felonies stemming from the December 15 arrest on separate occasions within the meaning of the ACCA. *See generally United States v. Hill*, 440 F.3d 292 (6th Cir. 2006). This alleged error, according to Amos, caused him to receive a sentence that exceeded the 10-year statutory maximum that he otherwise would have received and below which he was originally sentenced.

Amos's first argument fails because *Descamps* lacks relevance to the issue at hand. The *Descamps* Court did not address what documents courts may use to decide if the defendant committed offenses on separate occasions for ACCA purposes. Rather, the issue in *Descamps* was whether the lower courts applied the proper test when determining that a burglary conviction under an indivisible burglary statute (i.e., one not containing alternative elements) was a "violent felony" under the ACCA. *See* 18 U.S.C. § 924(e)(1), (2)(B); *see also Descamps*, 133 S. Ct. at 2281. In this case, however, Amos does not dispute that his prior offenses are violent felonies under the ACCA. *Amos*, 496 F. App'x at 520 n.3. Amos counters that, even if *Descamps* did not explicitly address whether courts may use *Shepard* documents to determine whether the defendant committed offenses on separate occasions, its reasoning supports the inference that they may not. But such a broad reading would seemingly preclude courts from considering any category of documents to determine whether prior offenses are violent felonies under the ACCA. It also bears emphasis that we indicated in our prior opinion that courts may use *Shepard* documents in determining whether "two or more prior offenses occurred on occasions different from one another under the ACCA." *Id.* at 521 n.4 (citation omitted). Therefore, Amos's first argument lacks merit.

We dispense with Amos's second argument summarily. The parties agree that the disjunctive test we outlined in *Hill* governs the district court's determination that Amos committed the at-issue felonies on separate occasions. Under *Hill*:

> First, two offenses are "committed on occasions different from one another" under the ACCA, if it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins. . . . Second, two offenses are committed for ACCA purposes if it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense. . . . Finally, separate offenses are committed if the offenses are committed in different residences or business locations.

440 F.3d at 297–98; *see also United States v. Jones*, 673 F.3d 497, 503 (6th Cir. 2012) (citation omitted) ("Offenses are separate if they meet any of these three tests.").

Judging the undisputed facts in the probable cause affidavit against this test, *see supra* pp. 4–5, we find no error in the district court's conclusion that Amos committed the offenses in question on separate occasions for ACCA purposes.[4]

## III. CONCLUSION

For the foregoing reasons, we **DENY AS MOOT** the United States' motion to dismiss and **AFFIRM** the district court's judgment.

---

[4] We criticized *Hill*'s disjunctive test in a recent opinion. *See United States v. Mann*, 552 F. App'x 464, 468 (6th Cir. 2014). However, Amos does not dispute that *Hill* applies in this case. Therefore, we have no occasion to revisit the *Hill* test.